**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ROBERT SHANNON**

        **Plaintiff,**        Civil Action No. 16-cv-10179

        v.        District Judge Mark A. Goldsmith

**COMMISSIONER OF**        Magistrate Judge Mona K. Majzoub
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Shannon seeks judicial review under 42 U.S.C. § 405(g) of Defendant Commissioner of Social Security's determination that he is not entitled to disability benefits under the Social Security Act. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 27) and Defendant's Motion for Summary Judgment (docket no. 30). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) Having reviewed the pleadings, the Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2) and issues this Report and Recommendation.

**I.    RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 27) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 30) be **GRANTED**.

## II.    PROCEDURAL HISTORY

On March 25, 2013, Plaintiff applied for disability insurance benefits, alleging that he has been disabled since February 14, 2011 due to arthropathy in his right hip and left lower leg as well as degenerative joint disease in his lower back. (TR 11-14.) The Social Security Administration initially denied Plaintiff's claims on June 7, 2013. On July 1, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Patrick J. MacLean. (TR 11.) At his hearing, and upon the advice and counsel of his attorney, the claimant amended his alleged onset date of disability to February 15, 2011. (*Id.*) On July 28, 2014, the ALJ issued an unfavorable decision on Plaintiff's claims. (TR 11-19.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on November 16, 2015. On January 19, 2016, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of his medical issues. (Docket no. 27, p. 6.) Defendant summarized Plaintiff's medical record and hearing testimony (docket no. 30, pp. 2-5), and the ALJ did the same in his decision (TR 13-19). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

2

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff acquired sufficient quarters of coverage to remain insured through December 31, 2012 (the "date last insured"), and thus concluded that Plaintiff was required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (TR 11-12). Next, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of February 15, 2011 through his date last insured, and that Plaintiff had the following severe impairments: "right hip traumatic arthropathy status post-surgery; degenerative joint disease - low back; lower left leg traumatic arthropathy." (TR 13-14.) Nevertheless, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (TR 14.) In addition, the ALJ determined that, through the date last insured, Plaintiff had the below residual functional capacity:

> [Plaintiff has the capacity] to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand, at-will, option every 15 minutes. The claimant can perform postural activities occasionally, including climbing stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant cannot climb ladders, ropes, or scaffolds. The claimant should avoid temperature extremes and wet/humid conditions. The claimant requires a cane for ambulation and the contralateral upper extremity can be used to lift and carry up to the exertional limits.

On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (TR 56-57.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from February 15, 2011, the alleged onset date, through December 31, 2012, the date last insured. (TR 19.)

## V.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the

4

conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff contends that the ALJ "committed an error of law by mischaracterizing the Plaintiff as limited to Light Work instead of Sedentary Work." (Docket no. 27, p. 4.) As set forth

5

above, the ALJ determined that Plaintiff had the RFC to perform Light Work as defined in 20 CFR 404.1567(b) subject to certain limitations, including a "sit/stand, at-will, option every 15 minutes" and use of "a cane for ambulation." (TR 14.)  Notwithstanding the exceptions, the ALJ concluded that Plaintiff could "lift and carry up to the exertional limits," i.e., the lifting/carrying criteria required to meet the Light Work classification. (*Id*.)

Although Plaintiff frames the Light Work classification as a question of law, his challenge practically comprises several sub-issues, which primarily involve findings of fact and application of agency rules and regulations.  These sub-issues will be addressed separately below.

*1. Application of the Exertional Capability Regulations*

Plaintiff's primary contention is that the ALJ erred by determining that Plaintiff is capable of performing Light Work, as opposed to Sedentary Work. (Docket no. 27, p. 8.)  As described more fully below, the ALJ properly concluded that Plaintiff was not limited to Sedentary Work.

As defined by Social Security Ruling (SSR) 83-10, Light Work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" as well as "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10 (S.S.A. 1983).  Conversely, Sedentary Work requires "lifting no more than 10 pounds at a time" and "walking and standing . . . occasionally," meaning "no more than about 2 hours of an 8-hour workday." *Id*.  Both sides acknowledge that if the ALJ had determined that Plaintiff was limited to Sedentary Work, Plaintiff would automatically have been considered disabled based on his age. (Docket no. 27, p. 8; docket no. 30, p. 8).

In applying the regulations to Plaintiff, the ALJ relied on the records of Dr. Cynthia Shelby-Lane, a non-treating physician who examined Plaintiff in July of 2013.  Dr. Shelby-Lane opined

6

that Plaintiff could "lift up to 20 pounds, sit for 6 hours total in an 8-hour workday, stand for 5 hours total in an 8-hour workday, and walk for 5 hours total in an 8-hour workday." (TR 238-43.) In addition, the ALJ referred to records indicating that Plaintiff visited the VA Medical Center in May and June of 2011 and November of 2013. On each occasion, Plaintiff requested a disability certification and was denied. (TR 246-82.) In June of 2011, Nurse Practitioner Kellie Marie Korona observed that Plaintiff "[did] not appear to be in any discomfort" and "ambulate[d] without difficulty." (TR 276-77.) Similarly, in November of 2013, Nurse Practitioner Korona noted that Plaintiff "ambulates w/o assist although he does carry a cane with him today." (TR 251.)

These records support the ALJ's determination that Plaintiff could perform Light Work, subject to certain additional limitations. Importantly, the regulations contemplate that a claimant's RFC may fall somewhere in between Light Work and Sedentary Work. *Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-12 (S.S.A. 1983). In particular, if a claimant's exertional level "falls between two rules which direct opposite conclusions" (in this case, Light Work and Sedentary Work), the ALJ should consider the following:

> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regularity definition, it could indicate little more than the occupational base for the lower rule and could justify finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

7

*Id.* The ALJ determined that Plaintiff was not capable of performing the full range of Light Work, but had capacity beyond the standards that define Sedentary Work. (TR 18.) Consistent with SSR 83-12, the ALJ proceeded to assess the extent to which Plaintiff's "additional limitations" would erode the job base. (*Id.*) Relying on the testimony of the vocational expert, the ALJ determined that Plaintiff would have been able to perform the requirements of representative occupations such as order caller (DOT #209.667-014), information clerk (DOT #237.367-018), and counter clerk (DOT #249.366-010). (*Id.*)

### 2. Residual Functional Capacity

The above analysis demonstrates that the ALJ was supported by substantial evidence in concluding that Plaintiff's capabilities exceeded the Sedentary Classification. However, Plaintiff raises additional issues regarding the ALJ's RFC assessment.

First, Plaintiff contends that the ALJ erred by determining that Plaintiff could lift and carry up to the exertional limits of the Light Work classification. Plaintiff asserts that that Light Work requires "frequent" lifting and carrying of up to ten pounds, which conflicts with Dr. Shelby-Lane's determination that Plaintiff was limited to "occasional" lifting and carrying. (Docket no. 27, p. 9.) Plaintiff is correct that the RFC exceeds the lifting and carrying determinations made by Dr. Shelby-Lane. However, the ALJ's determination that Plaintiff could "lift and carry up to the exertional limits" was supported by substantial evidence, including the records of the VA Medical Center, which impose no lifting or carrying limitations. Furthermore, because Dr. Shelby-Lane was not a treating physician, the ALJ was not required to give "good reasons" for deviating from her opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (observing that "the SSA requires ALJs to give reasons for only treating sources").

Next, Plaintiff asserts that, in analyzing Plaintiff's subjectively reported symptoms, the ALJ failed to follow the two-step test provided by 20 CFR § 404.1529(a).  In particular, Plaintiff contends that the ALJ was required to: (1) determine whether Plaintiff's reported symptoms are supported by "objective medical evidence from an acceptable medical source" showing an impairment that "could reasonably be expected to produce the pain or other symptoms alleged," and then to (2) evaluate the intensity, persistence and functionality limiting effects of pain or other symptoms.  (Docket no. 27, p. 10.)  Despite Plaintiff's objection, the ALJ's decision specifically addresses this two-step test.  (TR 14-15).  The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements regarding intensity, persistence and functionally limiting effects were "not entirely credible." (*Id.*)  Accordingly, the ALJ properly followed the two-step approach set forth in 20 CFR § 404.1529(a).

Finally, Plaintiff asserts that the ALJ improperly relied on a "gap in treatment records" in determining that Plaintiff's testimony was not credible.  (Docket no. 27, pp. 9-10.)  Plaintiff submits that his "indency [*sic*, indigence]" prevented him from seeking proper treatment for his conditions, and that this factor should not detract from Plaintiff's credibility.  (*Id.*)  While Plaintiff is correct that an ALJ should not fault claimants for inability to afford treatment, the ALJ in this case relied on substantial additional evidence that diminished Plaintiff's credibility.  Particularly, the ALJ observed that, when Plaintiff did seek treatment, he did so with the express purpose of obtaining disability paperwork.  (TR 16).  In addition, the ALJ highlighted Nurse Practitioner Korona's observations that Plaintiff ambulated without difficulty, did not appear to be in any discomfort, and did not exhibit "the significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that are associated with intense and disabling pain."  (TR

16.) Accordingly, the ALJ's reliance on Plaintiff's failure to seek treatment is at most a "harmless error." *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654–55 (6th Cir. 2009) ("[W]e review decisions of administrative agencies for harmless error.") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).

Based on the discussion and analysis above, the undersigned concludes that the ALJ's RFC assessment is consistent with and supported by substantial record evidence.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 27) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 30).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 13, 2017  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: October 13, 2017  s/ Lisa C. Bartlett
Case Manager